UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JACK ROBINSON,

               Plaintiff,

    -against-

OFFICER JIMMINEZ,

               Defendant.

-------------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAR 0 6 2012 ★

**BROOKLYN OFFICE**

**REPORT and
RECOMMENDATION
08-CV-902 (NGG) (LB)**

      Plaintiff, Jack Robinson, formerly incarcerated at the Metropolitan Detention Center in Brooklyn ("MDC"),[1] brings this *pro se* action against Officer JimmINEZ, a correctional officer at MDC. Plaintiff alleges defendant deprived him of his right to religious worship under the First Amendment. Defendant moves for summary judgment. The Honorable Nicholas G. Garaufis, United States District Judge, referred defendant's motion to me for a Report and Recommendation ("R&R") in accordance with 28 U.S.C. § 636(b). For the following reasons, I respectfully recommend that defendant's motion should be granted.

## BACKGROUND

      The following facts are supported by admissible evidence or taken in the light most favorable to plaintiff.[2]

---

[1] At the time this action was filed, plaintiff had been released from federal custody.

[2] Plaintiff did not file a statement of material facts pursuant to Local Civil Rule 56.1(b). Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). A party opposing summary judgment is required to submit a counter-statement under Rule 56.1(b). As plaintiff did not do so, the Court may deem the defendants' Rule 56.1 statement as admitted.

From March 30, 2007 to December 21, 2007, plaintiff was incarcerated at MDC.  Lynch Declaration ("Lynch Decl."), Exhibits 3-4.   On or about September 13, 2007, plaintiff, along with other Jewish prisoners, celebrated Rosh Hashanah (Jewish New Year) by conducting a service in the religious purpose room at MDC's Unit H-53; the service was interrupted by Correctional Officer Bryan Jimenez.[3]  Am. Compl. ¶ IV; Lynch Decl., Exhibit 12, Deposition Transcript of Jack Robinson ("Robinson Dep.") at 77.

Defendant Jimenez was assigned to work the 4 p.m. to 12 a.m. shift on September 13, 2007 at MDC's Unit H-53.   Jimenez Decl. at ¶¶ 21, 28.   Defendant Jimenez had been approached by a Muslim prisoner complaining that Muslim prisoners were scheduled to use the religious purpose room then occupied by plaintiff and other Jewish prisoners.  Id. at ¶ 34. Defendant states that he went to the H-53 Unit office and found a memorandum from the Religious Services Program staff which indicated that the Muslim prisoners were authorized to use the religious purpose room for their Ramadan service on the day in question.  Id. at ¶ 36; Lynch Decl., Exhibit 13, Robinson Dep. 98:7-14.  Thereafter, defendant Jimenez notified plaintiff and the other Jewish prisoners that they would have to vacate the room.  Jimenez Decl. at ¶ 37.  Plaintiff showed defendant that he had a memorandum from Rabbi Hoenig allowing him and the other Jewish inmates the use of the room.  Jimenez Decl., Exhibit C.  The Religious Services Program staff, consisting of a Chaplain, a Rabbi and an Imam, were responsible for scheduling the use of the religious purpose room.  Lynch Decl., Exhibit 10, Robinson Dep.

---

See Local Rule 56.1(c).  However, the Court may not rely solely on the statement of undisputed facts in the Rule 56.1 statement.  The Court accepts as true only those facts which are supported by record evidence.  Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); Giannullo, 322 F.3d at 143, n.5.

[3] Defendant Jimenez's name was misspelled by plaintiff and appears as "Jimminez" in the caption, however, the Court shall refer to the correct spelling of his name herein.

64:17-22. Defendant contacted Father McDevitt of the Religious Services Program staff and he confirmed that the Muslim inmates had permission to use the religious purpose room. Jimenez Decl. at ¶ 40.

Defendant Jimenez alleges that he contacted his supervisor, Lieutenant Paul Murdock, who accompanied him to the religious purpose room and informed the Jewish inmates that they had to leave. Jimenez Decl. at ¶¶ 41-42. Plaintiff alleges that the Jewish religious service was "abruptly terminated by officer Jim[e]nez" who then "contacted the Removal Team" and removed plaintiff and another inmate in handcuffs. Am. Compl. at 4, ¶ IV; Lynch Decl., Exhibit 14, Robinson Dep. 102:14. Plaintiff further alleges that he was "man handled, taken into the elevator and assaulted." Am. Compl. at 4, ¶ IV; Lynch Decl., Exhibit 15, Robinson Dep. 103:10-14. Plaintiff injured his "arm during the confrontation and ha[s] had problems with pain and range of motion, along with psychological injuries." Am. Compl. at 4, ¶ IV.A. As a result of this incident, plaintiff alleges that he suffers from anxiety and depression for which he receives treatment. See generally Pl. Opposition ("Pl. Opp."), Exhibit D (Docket Entry 119). The entire incident lasted less than ten minutes. Lynch Decl., Exhibit 16, Robinson Dep. 105:10-23. Plaintiff does not identify defendant Jimenez as the person who physically removed him from the religious purpose room. Defendant Jimenez alleges that he "and Lieutenant Murdock remained in the religious purpose room until it had been completely vacated." Jimenez Decl. at ¶ 45. Sometime later that same evening, the Jewish inmates, along with plaintiff, returned to the religious purpose room "after letting the Muslims [use it] and giving them another room," Lynch Decl., Exhibit 16, Robinson Dep. 104:2-5. Thereafter, plaintiff continued to use the religious purpose room to conduct daily prayers "on a regular basis" until he was released from MDC. Lynch Decl., Exhibit 17, Robinson Dep. 113:8-13.

3

## PROCEDURAL HISTORY

On January 23, 2008, plaintiff commenced this *pro se* action against the United States Government and the Federal Bureau of Prisons ("BOP") alleging that while incarcerated at MDC in September 2007, staff terminated his religious worship and he was maltreated.[4]  On March 7, 2008, plaintiff amended his complaint to name A. Jimenez. (Docket Entry #8, "Compl."). Specifically, plaintiff alleged that on September 12, 2007, while holding High Holy Day Services for Rosh Hashanah, MDC Officer Jimenez "burst in told the participants the service was over and ordered them out of the room, he contacted the response staff, who in turn handcuffed members of the congregation.  The Plaintiff, who presided over these services, because he is fluent [in] Hebrew, was taken into the elevator & physically assaulted." (Compl. at 1).  On March 28, 2008, the Court granted plaintiff's request to proceed *in forma pauperis* and directed the United States Marshals Service to serve the summons and complaint on defendants.

On September 12, 2008, defendants United States, BOP and A. Jimenez moved to dismiss the complaint.  By Memorandum and Order dated September 16, 2008, the Court granted defendants' motion in part and denied it in part.  (Docket Entry #30).  Specifically, the Court dismissed plaintiff's constitutional claims against the United States and the BOP based on sovereign immunity.  The Court directed plaintiff to file an amended complaint to allege a claim under the Federal Tort Claims Act ("FTCA") and to allege any BOP employees' personal involvement in the alleged physical assault against plaintiff.  Finally, the Court denied defendants' motion to dismiss plaintiff's First Amendment claim against defendant Jimenez.

---

[4] Plaintiff commenced this action in the Northern District of New York by filing a "Brief in Support" and a request to proceed *in forma pauperis*, but not a complaint.  By order dated February 7, 2007, the case was transferred to this Court. (Docket Entry #6).

On November 14, 2008, plaintiff filed an amended complaint (Docket Entry #33, "Am. Compl.") against the BOP, Officer Jimenez, MDC Warden Lindsay, Rabbi Hornic, Reverend McDevett and John Does #1-7.  On April 22, 2009, defendants moved to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") on the ground that the Court lacked subject matter jurisdiction over any Federal Tort Claims Act claim because plaintiff had failed to exhaust his administrative remedies.  (Docket Entry #44-46).  Defendants also moved to dismiss plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) against the individual defendants arguing that plaintiff had failed to allege their personal involvement in the excessive force claim.  Plaintiff opposed defendants' motion. (Docket Entry #41, "Pl. Opp.").  On March 24, 2010, I issued a Report and Recommendation recommending that defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) should be granted, including dismissal of plaintiff's First Amendment claim against Warden Lindsay, Rabbi Hornic,[5] Reverend McDevett and John Does #1-7.  I further recommended that plaintiff's motion for summary judgment should be denied.  (Docket Entry #54).  By Order dated April 28, 2010, Judge Garaufis adopted the R&R in its entirety. Only plaintiff's First Amendment claim against defendant Jimenez proceeded.  (Docket Entry #55).  Defendant Jimenez now moves for summary judgment alleging that plaintiff's claim that he was deprived of his right to religious worship was *de minimis* and that defendant is entitled to qualified immunity. (Docket Entry #115).  Defendant provided plaintiff with the requisite Local 56.2 notice.  Plaintiff opposes the motion and files a "Revised Motion for Summary Judgment" seeking damages and to include defendants Lindsay, Hornic and McDevitt who were previously dismissed from this action.  (Docket Entry #119, 127, 129-131).

---

[5]  The Court assumes that plaintiff is referring to Rabbi Hoenig when he refers to Rabbi Hornic or Rabbi Hornick and has just misspelled his name.

## STANDARD OF REVIEW

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).  A fact is material if it is one that "might affect the outcome of the suit under the governing law." Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A genuine dispute as to any material fact exists where "a reasonable jury could return a verdict for the nonmoving party." Redd v. Wright, 597 F.3d 532, 536 (2d Cir. 2010) (internal quotation marks omitted); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. The Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the non-moving party on summary judgment).

The Court views the facts here in the light most favorable to plaintiff.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . ." Fed. R. Civ. P.  56(c)(1)(A); see Matsushita, 475 U.S. at 586-87.  In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257.

6

"Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)); Davis v. State of New York, 316 F.3d 93, 100 (2d Cir. 2002) (same). Moreover, "'[t]he mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Niagara, 315 F.3d at 175 (quoting Anderson, 477 U.S. at 252). Finally, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The Court construes plaintiff's pleadings liberally "to raise the strongest arguments they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); see also Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 82 n.4 (2d Cir. 2001) (internal quotation marks omitted).

## DISCUSSION

### A.      First Amendment

Plaintiff commenced this action pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 456 F.2d 1339, 1346 (2d Cir. 1972) ("Bivens"). A claim under Bivens must allege facts showing that the defendant acted under color of federal law to deprive plaintiff of a constitutional right. *Id.*; Butz v. Economou, 438 U.S. 478, 498-99 (1978); Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995) (*per curiam*). Here, plaintiff alleges that defendant Jimenez violated his rights under the First Amendment when defendant interrupted plaintiff's religious worship service on Rosh Hashanah in September, 2007.

It is well-settled that while incarcerated a prisoner retains his right to religious freedom under the Free Exercise Clause of the First Amendment and is "entitled to a reasonable accommodation of his religious beliefs," Jackson v. Mann, 196 F.3d 316, 320 (2d Cir. 1999) (citations omitted); see also Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003), including the "right to participate in congregate religious services." Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993) (citation omitted). However, a prisoner's right to the free exercise of his religion is restricted due to his confinement and an infringement will not be held to violate a prisoner's right to free exercise of religion if that infringement is "reasonably related to legitimate penological interests," O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (internal quotation marks omitted), superseded on other grounds by statute, Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq.,[6] and did not result in a substantial burden on the exercise of a prisoner's beliefs. Ford, 352 F.3d at 591 (discussing whether a substantial burden analysis is still necessary, but nevertheless, applying it in the case).

---

[6] RLUIPA provides, in pertinent part, that

1. [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of a burden on that person-1) is in furtherance of a compelling governmental interest; and 2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The same principles underlying the plaintiff's free exercise claim apply to the RLUIPA cause of action, although the two claims are analyzed under somewhat different frameworks, see Salahuddin v. Goord, 467 F.3d 263, 264 (2d Cir. 2006); Taylor v. Halladay, No. 9:09-CV-385, 2010 WL 3120036, at *9 (N.D.N.Y. Jul. 1, 2010). "District courts in this circuit . . . treat claims under the First Amendment and under RLUIPA as separate causes of action." Jones v. Goord, 435 F.Supp.2d 221, 260 (S.D.N.Y. 2006). Here, neither side has raised RLUIPA and therefore the Court need not address RLUIPA as a separate cause of action.

Defendant Jimenez argues that plaintiff's religious service "was stopped due to a scheduling conflict with another group of inmates who had also reserved the religious purpose room for the same time as Plaintiff." Def. Memorandum of Law ("Def. Memo.") at 5-6; see also Jimenez Decl. at ¶¶ 36-42. Plaintiff testified at his deposition that he was notified of the scheduling conflict. See Lynch Decl., Exhibit 13, Robinson Dep. 98:7-14. Defendant further argues that the one-time interruption of plaintiff's religious service was *de minimis* and did not constitute a substantial burden on plaintiff's free exercise rights under the First Amendment. Def. Memo. at 6-7.

Plaintiff opposes defendant's motion and relies on the memorandum from Rabbi Hoenig "authorizing the service." Plaintiff argues that defendant Jimenez "exceeded due process." Pl. Opp. at 10. Plaintiff includes identical affidavits from three prisoners who were present at the time of the incident. Pl. Opp., Exhibit 2.[7] These witnesses allege that defendant Jimenez notified them of a conflict in the schedule for use of the religious room "as the Moslem's need the room too." Pl. Opp., Exhibit 2, Affidavits of Albert Ilyayev, William T. Liebowitz, Richard Turkieltaub, at ¶ 5. These witnesses also allege that defendant Jimenez ignored Rabbi Hoenig's memorandum and "informed the remaining Jewish inmates in the religious room that they had no rights of any kind in the B.O.P. and that in cases of religion the Moslem faith came first and were more important than the Jewish faith." *Id.* at ¶¶ 6, 14.

---

[7] Plaintiff also includes "telephonic affidavits" taken of Rabbi Potasnik and Dr. Lendvei (Docket Entry 121-122), as well as his own "deposition" taken by Anthony Frallicciardi, who does not appear to be an attorney. (Docket Entry 120). These telephonic affidavits and the "deposition" transcript appear to be submitted in support of plaintiff's claim for damages.

### 1.   Reasonably Related to Legitimate Penological Interests

Defendant Jimenez argues that plaintiff's religious service was "stopped due to a scheduling conflict with another group of inmates who had also reserved the religious purpose room for the same time as plaintiff." Def. Memorandum of Law ("Def. Memo.") at 5; see also Jimenez Decl. at ¶¶ 36-42.    The Court must consider four factors in evaluating the constitutionality of defendant's conduct. "1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison systems; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest." Turner v. Safley, 482 U.S. 78, 90-91 (1987).    "An individualized decision to deny a prisoner the ability to engage in religious exercise is analyzed in the same way as a prison regulation denying such exercise." Salahuddin v. Goord, 467 F.3d 263, 274 n.4 (2d Cir. 2006) (citation omitted).

The record shows that defendant Jimenez's interruption of plaintiff's Rosh Hashanah service was "reasonably related to legitimate penological interests" in order to maintain order and to prevent an altercation between Muslim and Jewish prisoners who both claimed they had reserved the room for their religious services.  Defendant Jimenez states that he attempted to ascertain which group of prisoners was authorized to use  the religious purpose room and that he reviewed two competing memorandums from the Religious Services Program staff and consulted with Father McDevitt.  Jimenez Decl. at ¶¶ 36, 39-40.  Plaintiff does not dispute that Muslim prisoners were also authorized to use the same room at the same time.  See Lynch Decl.,

Exhibit 13, Robinson Dep. 98:7-14.[8]  In fact, plaintiff provides a copy of a Muslim inmate's "Cop Out" or "Inmate Request to Staff" dated September 16, 2007, referring to the interruption of plaintiff's Rosh Hashanah service as a result of the scheduling conflict.  See Pl. Opp., Exhibit 2.

When plaintiff and another Jewish inmate refused to leave the religious purpose room as ordered by defendant Jimenez and Lieutenant Murdock, other MDC correctional officers were called to clear the room.  Plaintiff does not dispute that he refused to leave the room.  Instead, plaintiff relies on Rabbi Hoenig's memorandum allowing Jewish inmates access to the religious room for Rosh Hashanah services as his basis for refusing to leave.  See Pl. Opp., Exhibit 2. Contrary to plaintiff's conclusion that this "case is open and shut with one exhibit the memo from Rabbi Hornick Authorizing the service," Pl. Opp.,  the record demonstrates that the conflict here was not caused by a prison policy or regulation prohibiting plaintiff's religious exercise, but rather by a scheduling error by MDC's Religious Services Program staff.

Although plaintiff maintains that his right to free exercise was violated when the Jewish inmates were made to leave the room, "the burden remains with the prisoner to 'show that the[] [articulated] concerns were irrational.'"  Salahuddin, 467 F.3d at 275 (citing Ford, 352 F.3d at 595).  Plaintiff does not dispute that there was a scheduling conflict between the Muslim and Jewish prisoners over who would be permitted to use the religious purpose room.  Other than affidavits by prisoners attributing statements to defendant Jimenez that Muslim prisoners'

---

[8]  Plaintiff further testified:  "[defendant Jimenez] didn't ask the Jewish people to leave. What he say is a conflict.  Instead of him taking the Muslim to another room that was available, he didn't do that.  He just failed."  Lynch Decl., Exhibit 13, Robinson Dep. 98:19-23.

worship was more important than the Jewish prisoners' worship needs, see Pl. Opp., Exhibit 2,[9] nothing in the record shows that defendant's reason for interrupting the service was not reasonably-related to the legitimate penological interest of maintaining order and preventing a dispute between prisoners from escalating. The Court gives deference to "prison administrators . . . to make the difficult judgments concerning institutional operations." Jones v. North Carolina Prisoner's Union, 433 U.S. 119, 125 (1977); Graham v. Mahmood, No. 05 Civ. 10071 (NRB), 2008 WL 1849167, at *12-13 (S.D.N.Y. Apr. 22, 2008) (prison policy regarding religious meetings reasonably-related to legitimate penological interests).[10] Despite the statement attributed to defendant, the incident appears to have been isolated and not a result of any BOP policy to deny Jewish inmates congregate religious services.

### 2. Substantial Burden or De Minimis Standard

Defendant Jimenez further argues that the one-time interruption of plaintiff's religious service, even if it was a violation, was *de minimis*. Def. Memo at 6-7. Plaintiff does not dispute or address this argument. However, plaintiff did testify at his deposition that he was allowed to return to the religious purpose room to resume the service and that he used the religious purpose

---

[9] See Pl. Opp., Exhibit 2, Affidavits of Albert Ilyayev, William T. Liebowitz, Richard Turkieltaub:

"11) Lt. Murdock informed Robinson, Swapp and the other assembled Jewish inmates, "YOU GUYS HAVE NO RIGHTS,NOT EVEN RELIGIOUS RIGHTS HERE ... THE MOSLEM'S COME FIRST IN THE B.O.P. AND THE JEW'S ARE AFTER THEM!" (emphasis and spelling as in original).

"14) After Robinson and Swap were removed to the hallway, C.O. Jimmenez informed the remaining Jewish inmates in the religious room that they had no rights of any kind in the B.O.P. and that in cases of religion the Moslem faith came first and was more important than the Jewish faith."

[10] The Clerk of Court is directed to send plaintiff the attached copies of all unreported cases cited herein.

12

room daily for the remainder of his incarceration at MDC.   See Lynch Decl., Exhibit 17, Robinson Dep. 104:2-5; 113:8-13.

In Ford, the Second Circuit found that "the Circuits apparently are split over whether prisoners must show a substantial burden on their religious exercise in order to maintain free exercise claims" but still applied the substantial burden test to plaintiff's claim that the prison's denial of the Eid ul Fitr meal violated his First Amendment rights.   Ford, 352 F.3d at 592. Moreover, the "courts in the Second Circuit are divided on the issue of whether missing one religious service constitutes a violation of an inmate's right to the free exercise of religion," Page v. Breslin, No. 02-CV-6030 (SJF), 2004 WL 2713266, at *6 (E.D.N.Y. Nov. 29, 2004) (citing cases); but see Hanton v. Mathiau, 29 F.App'x 772 (2d Cir. 2002) (affirming dismissal of prisoner's complaint that he was denied two days of congregate religious services over a three month period) and Gill v. DeFrank, No. 98 Civ. 7851 (NRB), 2000 WL 897152, at *1-2 (S.D.N.Y. July 6, 2000) ("missing one religious service does not constitute a substantial burden"), aff'd, 8 F.App'x 35 (2d Cir. 2001); see also Graham, 2008 WL 1849167 at *12-13 (prisoner was able to participate in weekly religious classes, the prison's failure to provide more services was *de minimis*).

Here, the record does not demonstrate that plaintiff's religious exercise was substantially burdened by defendant's action on September 13, 2007.   Plaintiff testified that his religious worship of Rosh Hashanah was interrupted, not denied; plaintiff was allowed to resume his religious worship that same evening in the religious purpose room.   See Lynch Decl., Exhibit 16, Robinson Dep. 104:2-5 ("and brought us down back to the religious room, after letting the Muslims and giving them another room, which should have been done to begin with").   Plaintiff also continued to use the religious purpose room to conduct daily prayers "on a regular basis"

13

until he was released from MDC.   Lynch Decl., Exhibit 17, Robinson Dep. 113:8-13. Accordingly, there is no record evidence to show that defendant's interruption of the Rosh Hashanah service substantially burdened plaintiff's religious beliefs.   See, e.g., Johnson v. Newton, No. 02-CV-1277, 2007 WL 778421, at *5 (N.D.N.Y. Mar. 13, 2007) (plaintiff failed to prove that defendants had substantially burdened his religion when he alleged that he was prevented from entering a mosque, but then later testified at his deposition that the officer initially blocked the door to the mosque *but eventually let him enter*) (emphasis added).   I therefore recommend that defendant's motion for summary judgment should be granted.

### B.   Qualified Immunity

In the alternative, if the Court were to find that defendant's actions violated plaintiff's rights, defendant Jimenez argues that he is entitled to qualified immunity. Def's. Memo. at 7-10. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009).  In analyzing claims of qualified immunity, a Court must assess: (1) "whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right"; and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).   The district court may address either prong first in light of the circumstances of each case.  *Id.* at 236. "A defendant is entitled to qualified immunity only if he can show that, viewing the evidence in the light most favorable to plaintiff, no reasonable jury could conclude that the defendant acted unreasonably in light of the clearly established law." Ford v. Moore, 237 F.3d 156, 162 (2d Cir. 2001). When determining whether a right is clearly established, this Court looks to the law of the Supreme Court and the Second

14

Circuit at the time of the defendant's actions. Huminski v. Corsones, 396 F.3d 53, 88 (2d Cir. 2005) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Here, neither party disputes that defendant Jimenez interrupted plaintiff's Rosh Hashanah service and there is no dispute that the defendant's interruption was caused by a scheduling error. As discussed above, the record demonstrates that defendant's one-time interruption of the Rosh Hashanah service did not violate plaintiff's First Amendment rights as it was reasonably-related to a legitimate penological interest and did not substantially burden plaintiff's free exercise of religion.

However, even if defendant's interruption of plaintiff's service did rise to a constitutional violation, no reasonable jury could conclude that defendant Jimenez acted unreasonably when faced with a scheduling conflict for use of the religious purpose room. Even if defendant Jimenez showed "poor judgment" as plaintiff contends, see Pl. Opp. at 9, qualified immunity protects government officials when they make "reasonable mistakes" about the legality of their actions, Saucier, 533 U.S. at 206, and is "applied regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact," Pearson, 555 U.S. at 231 (internal quotation marks omitted). "In this respect, the Supreme Court has observed that qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007).

Moreover, it was not clearly established at the time of the incident that the interruption of one religious service would have violated a prisoner's First Amendment rights. The case law at the time did not provide definitive guidance on whether defendant Jimenez's action violated plaintiff's free exercise of religion. Def. Memo. at 9-10; Gill v. DeFrank, 8 F.App'x 35, 37 (2d

15

Cir. 2001); Hanton, 29 F.App'x at 773. I therefore recommend, in the alternative, that defendant Jimenez's motion should be granted as he is entitled to qualified immunity.

### C.    Plaintiff's Revised Motion for Summary Judgment[11]

Plaintiff cross-moves for summary judgment and seeks to "reintroduce Defendants B thru D [Cameron Lindsey, Reverend McDermett, Rabbi Hornic]. (Docket Entry 127, Pl. Revised Summary Judgment Motion at ECF p.3.)[12] Plaintiff alleges that defendant Jimenez interrupted the Rosh Hashanah service "with Anti Semitic Banters," Id. at ECF p.6. Plaintiff further alleges that Father McDevitt "acrimoniously scheduled the Muslim service in the same room. Causing more confusion." Id. at ECF p.7. Plaintiff alleges that Rabbi Hoenig should have presided over the Rosh Hashanah service and that Warden Lindsay should have conducted an "internal and external investigation." Id. at ECF p. 6-7. Defendant filed a letter-motion dated December 30, 2010, seeking denial of plaintiff's motion. (Docket Entry #128). Plaintiff filed a reply or opposition to defendant's letter-motion. (Docket Entry #129-130).

Despite plaintiff's insistence to the contrary, the Court has already dismissed defendants Lindsay, McDevitt and Hoenig from this action. (Docket Entry #55, Order adopting R&R dated April 28, 2010). Even liberally construing plaintiff's submission as a request for reconsideration, there is no basis for granting plaintiff summary judgment.

Plaintiff's allegation regarding defendant Jimenez does not alter the Court's recommendation that defendant Jimenez's motion for summary judgment should be granted.

---

[11] Although not formally referred, I include plaintiff's motion in this Report to be complete.

[12] As not all of plaintiff's submissions are paginated, the Court relies on the page numbers assigned by the Electronic Case Filing system ("ECF").

Although plaintiff alleges that defendant Jimenez interrupted the Rosh Hashanah service with "Anti Semitic Banters" which the Court would never condone, this allegation is not supported by admissible evidence.[13]  Rather, plaintiff's deposition testimony is to the contrary.  When asked what defendant Jimenez said to him, plaintiff responded: "I don't recall." ... "All what he did, he just pressed the emergency button to interrupt our religious . . .."  See Lynch Decl., Exhibit 15, Robinson Dep. 49:23-50:10.  Moreover, plaintiff does not describe defendant Jimenez as the MDC Officer who physically removed him from the room and Jimenez states that he and Lt. Murdock remained in the religious purpose room until it had been completely vacated.  Jimenez Decl. ¶ 45.  As such, there is no basis in the record for holding defendant Jimenez liable for any injuries attributed to plaintiff's removal from the religious purpose room or plaintiff's claim that he was "manhandled" in the elevator.  Pl. Opp. at 3.  As for Warden Lindsay, Father McDevitt and Rabbi Hoenig, plaintiff has fallen short of providing admissible evidence from which one could reasonably conclude that their conduct violated plaintiff's constitutional rights.  I therefore recommend that plaintiff's cross-motion for summary judgment should be denied.  Similarly, plaintiff's "Demand for Damages" should be denied as moot.  (Docket Entry #131).

## CONCLUSION

Accordingly, it is respectfully recommended that defendant's motion for summary judgment should be granted (Docket Entry #115) and that plaintiff's "Revised Motion for Summary Judgment" and "Demand for Damages" should be denied. (Docket Entry # 127, 129-131).

---

[13]  Moreover, verbal abuse does not rise to the level of a constitutional violation.  See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) (holding that name-calling without "any appreciable injury" did not violate inmate's constitutional rights).

17

## FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital District Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

/Signed by Judge Lois Bloom/
_____

LOIS BLOOM
United States Magistrate Judge

Dated: March 6, 2012
        Brooklyn, New York

18

COPIES TO:

Hon. Nicholas G. Garaufis, United States District Judge

Jack Robinson, Plaintiff *Pro Se*
67 Strawberry Lane
Staten Island, NY 10312

Timothy D. Lynch, Attorney for Defendant
Assistant United States Attorney
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201